*In re* SCHOVERLING *et al.*

(*Circuit Court, S. D. New York.* January 29, 1891.)

1. CUSTOMS DUTIES—GUN-STOCKS—TARIFF ACT OF OCTOBER 1, 1890.
   Gun-stocks, with mountings complete, ready for attachment to the barrels, which arrived by another shipment, and which, when attached, made double-barrelled breech-loading shotguns complete, *held* to be dutiable at 45 per centum *ad valorem*, as "manufactures, articles, or wares not specially enumerated or provided for, composed wholly or in part of iron, steel, * * * or any other metal, and whether partly or wholly manufactured," under paragraph 215 of the act of October 1, 1890, and not dutiable at the higher duty provided in paragraph 170 of said act, for "all double-barrelled, sporting, breech-loading shotguns."

2. SAME—INTENTION.
   The intention with which goods are imported into this country is immaterial, provided importers keep within the terms of the tariff act, and duties are to be assessed upon merchandise in the form or condition in which it actually arrives, and under the provisions of law applicable thereto.

Appeal from Board United States General Appraisers.

The importers, Schoverling, Daly & Gales, of the city of New York, on the 20th of October, 1890, imported, per steamer Amsterdam, into the port of New York certain gun-stocks with the usual metal mountings complete, without the barrels. The collector of the port assessed duty thereon under paragraph 170 of the tariff act of October 1, 1890, which provides for both a specific and *ad valorem* duty upon "all double-barrelled, sporting, breech-loading shotguns." The collector held that they should pay such duty because the only use to which they could be put was in connection with the barrels of such arms, and it was admitted by the importers to be their intention to fit the stocks with barrels imported by another house, in which a member of their firm was a partner. The importers duly protested against this exaction of duty, claiming that their merchandise were not shotguns, but only parts thereof, and that they were properly dutiable under paragraph 215 of said tariff act of October 1, 1890, which reads as follows:

"Manufactures, articles, or wares not specially enumerated or provided for, composed wholly or in part of iron, steel, * * * or any other metal, and whether partly or wholly manufactured, forty-five per centum *ad valorem*."

—And duly appealed to the board of United States general appraisers, sitting at the port of New York, which board affirmed the decision of the collector. The importers thereupon took the necessary proceedings under section 15 of the act of June 10, 1890, to bring the case before this court for a review of the decision of the board of general appraisers. The appraisers, in pursuance of an order of the court, duly filed their return, with the testimony taken before them, from which it appeared that the said firm of Schoverling, Daly & Gales had an agreement with another firm, of which Mr. A. Schoverling was also a partner, by which the latter were to order the barrels for these goods, with the mutual understanding that the stocks and barrels after arriving at the port of New York by different shipments were to be put together, so as to make completed double-barrelled, sporting, breech-loading shotguns; and that noth-

ing remained to be done after importation to the gun-stocks or to the barrels, except the ordinary manipulation of putting them together.

*Comstock & Brown*, for importers,—

Cited *Farwell* v. *Seeberger*, 40 Fed. Rep. 529; *Luckemeyer* v. *Magone*, 38 Fed. Rep. 35; *Merritt* v. *Welsh*, 104 U. S. 694, claiming that the importers had the right to import goods in any condition to meet the requirements of the tariff act, in order to have their goods dutiable at a lower instead of a higher rate of duty.

*Edward Mitchell*, U. S. Atty., and *Henry C. Platt*, Asst. U. S. Atty., for collector and government,—

Contended that, under the peculiar agreement shown by the evidence in this case, the completed gun-stock was, for duty purposes, only to be considered a part of an importation, the other part of which was to arrive on another vessel, forming together, for all practical purposes, one importation of a completed shotgun; that the manufacture was complete, and nothing remained to be done after importation to make the merchandise a completed shotgun except to put them together, which could be done by any person; that they had been manufactured wholly and completely before importation, and adapted to be put together by the manufacturers before shipping; that the mere shipment of the completed shotguns under this arrangement, in two separate parts, was only a cunningly-devised scheme to evade the payment of the lawful duty upon completed shotguns, which evinced a very low standard of commercial morality; and that the duty was properly assessed by the collector upon the merchandise in question under paragraph 170 of the tariff act of October 1, 1890, (S. S. 10573—G. A. 223.)

LACOMBE, Circuit Judge, (*orally.*) The question of intention does not enter into this case at all, provided the importers have done no more than what, under the terms of the tariff, they may do. Such is the doctrine of the *Luckemeyer* and *Farwell Cases*, referred to on the argument. Whether their object was to make their goods more readily salable in this way, or by this particular method of importation to secure the entrance of the goods here at a lower rate of duty than they would otherwise have to pay, is wholly immaterial, provided that what they have done is within the terms of the tariff act. Now, there is no evidence that these articles were ever "assembled" or brought together with the gun-barrels on the other side. There is no finding to that effect by the appraisers; and, if there were such a finding of fact, I should be constrained to reverse it, because there is no evidence in the record to support it. I do not by this mean to imply that that single fact would be controlling of the case if it were here; it is enough to say that it is not here. For all that appears, the gun-stocks may have been bought from one manufacturer, and the gun-barrels from another. They came here under a provision of the tariff act which lays a duty upon "sporting, breech-loading shotguns," and lays a separate and a different duty upon the parts of which those sporting, breech-loading shotguns are composed, as "manufactures in whole or in part of metal." It can be fairly assumed that congress by that very terminology meant to allow importers who choose to do so, to bring in fragments of a combination article by different shipments, and then to employ domestic labor in putting them

together. It may have been intended to induce importers to employ to that extent the labor of this country, instead of having the article combined abroad. We cannot tell, of course, what operated upon the minds of the framers of that particular passage of the act. We can only deal with their language as they have set it down for us, and under that language it seems very clear that there is nothing in this shipment except "gun-stocks mounted,"—articles which are properly described in the tariff, only by the phrase "manufactures composed wholly or in part of metal;" and they should therefore pay that duty, and no other. The decision of the board of appraisers is reversed.